J-S34009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.K.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 578 WDA 2023 |

Appeal from the Order Entered April 24, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000128-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: X.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.K.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 579 WDA 2023 |

Appeal from the Order Entered April 24, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000127-2022

BEFORE: LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.: **FILED: OCTOBER 25, 2023**

R.K.B. (Mother) appeals from the orders,[1] entered in the Court of

Common Pleas of Allegheny County, Orphans' Court Division, terminating her

---

[1] We note that by filing two separate notices of appeal, from docket numbers CP-02-AP-128-2022 and CP-02-AP-127-2022, Mother has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018), which
*(Footnote Continued Next Page)*

parental rights to X.F. (born 4/2016) and A.F. (born 8/2014) (collectively, Children), pursuant to subsections 2511(a)(2), (5), (8) and (b) of the Adoption Act.[2]  Upon review, we affirm.

In September 2020, Allegheny County Office of Children Youth and Families (CYF) received a referral regarding this family.  CYF Caseworker Rhianna Diana testified that the agency received reports of deplorable conditions in the family home, truancy concerns for A.F.,[3] and alleged substance abuse by Mother and Father.[4]  *See* N.T. Termination Hearing, 3/31/23, at 80-81.  CYF offered services for approximately six months, including referrals for substance abuse evaluations.  Parents, however, did not cooperate, and, on March 10, 2021, CYF filed petitions for dependency.  At that time, CYF did not seek removal of Children from the home, agreeing to give the family a five-week deferral and another opportunity to cooperate with services.  *Id.* at 84.  Mother was required to engage in mental health

---

held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases."  *See also* Pa.R.A.P. 341(a).  On June 15, 2023, this Court consolidated the cases *sua sponte*.  *See* Pa.R.A.P. 513.

[2] *See* 23 Pa.C.S.A. §§ 2101–2938.

[3] The truancy concerns also involved an older child, Children's half-sibling, who is now in the care of her biological father and is not a subject of this appeal.  Just prior to the termination hearing, Mother gave birth to another child, who is also not a subject of this appeal.

[4] Father's rights were also terminated.  He did not file an appeal.

- 2 -

treatment, cooperate with CYF, comply with POWER[5] recommendations, ensure A.F. was evaluated for anxiety concerns, and assure school-age children attended school regularly and on time. *Id.* at 85.

After Caseworker Diana was unable to see Children for one and one-half months, CYF, along with investigators and local police, gained access to the home on May 24, 2021. The home was in poor condition, had no hot water, and was cluttered with garbage. *Id.* at 85-87. CYF obtained an Emergency Custody Authorization (ECA), and Children were placed in kinship care with maternal aunt and, ultimately, with foster parents, with whom they have remained. *Id.* at 87.

On June 1, 2021, the court adjudicated Children dependent. *See* 42 Pa.C.S.A. § 6302(1).[6] Mother and Father were subsequently evicted from

---

[5] POWER, or Pennsylvania Organization for Women in Early Recovery, provides drug and alcohol resources for women struggling with addiction, including outpatient and community-based services to support and mentor women in recovery. https://power-recovery.com/about-power/ (last visited 10/4/23).

[6] The Juvenile Act defines "dependent child" as one who

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian, or other custodian's use of alcohol or a controlled substance that places the health, safety[,] or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302(1).

their home and remained homeless for the duration of this case. N.T. Termination Hearing, **supra** at 86, 98.

CYF developed a plan to assist Mother in reunifying with Children, which included the following goals: complying with drug and alcohol treatment; working with in-home services; obtaining and maintaining stable housing; attending random urine screens; consistent visitation with Children; signing releases of information; engaging in mental health treatment; cooperating and maintaining contact with CYF; and ensuring Children were medically up to date and attending school. **Id.** at 90. The court ordered Mother to comply with in-home services, continue mental health treatment, sign all necessary releases of information to verify treatment, comply with an updated POWER assessment and recommendations, and comply with random urine screens. **Id.** at 88-89.

On November 6, 2020, CYF referred crisis in-home services for the family. Caseworker Diana testified that those services closed on January 5, 2021 due to parents' "noncompliance." **Id.** at 82-83.

At permanency review hearings on September 2, 2021, December 16, 2021, March 17, 2022, and June 9, 2022, the court found Mother was minimally compliant with, and had made minimal progress toward, her permanency goals. Despite services being available to her, Mother failed to comply with the recommendations in the court's orders.

On September 15, 2022, sixteen months after Children were removed from the home, CYF filed petitions for termination of parental rights with respect to A.F. and X.F.

On March 31, 2023, the court held a termination hearing, at which the following individuals testified: Rachel Wagner of POWER; Tarraca Jackson of the Allegheny County Health Department, Urine Screening Office; Foster Care Caseworker Hannah Newham of Adoption Connections; Eric Bernstein, Psy.D.; CYF Caseworker Rhianna Diana; Jamie Leasure of Adoption Connections; Mother; and Father.

CYF Caseworker Diana testified Mother was not compliant with services. Mother did not provide verification of mental health treatment, she did not engage in drug and alcohol treatment until April or May 2022, following a relapse, and she continued to test positive for illicit substances. *Id.* at 105.

Tarraca Jackson of the Allegheny County Health Department, Urine Screening Office, testified that out of twenty-eight scheduled urine screens, Mother completed only seven, and of those seven, four were positive for opiates, fentanyl, and marijuana. *Id.* at 16-18, 23. In-home services were closed three times for Mother's lack of compliance, Mother did not maintain contact with CYS, and she did not secure housing. *Id.* at 99. Mother acknowledged that she should have made more of an effort with in-home services but stated that she was dealing with eviction at that time. *Id.* at 142. She also acknowledged that she was inconsistent in attending her urine screens. *Id.* at 163.

Further, Mother did not consistently attend supervised visitation with Children. Foster Care Caseworker Hannah Newham, of Adoption Connections, testified that she was responsible for arranging supervised visitation between parents and Children. *Id.* at 30. She stated that, of 74 scheduled visits, only 46 visits occurred.[7] *Id.* at 31. She also testified that Mother had no visits between March 2022 and May of 2022. *Id.* at 31-32. Mother acknowledged this and explained that she was homeless and without a phone during that time but stated that, as of the date of the termination hearing, she had signed paperwork for housing through the HUD[8] housing program and was on a waiting list. *Id.* at 150-51, 154, 164. Mother never progressed to unsupervised visits with Children. *Id.* at 88.

Newham also testified that she saw Children in the foster home every other week, that Children are "happy," and that there is a mutual and "very loving" bond between Children and foster parents. *Id.* at 32-233. She also stated that A.F., who had significant anxiety, especially around men, has progressed significantly since her placement with foster parents:

> When [A.F.] was first placed last year she would not really talk to the foster dad and she would not look at him, didn't really want to be in the room with him. Then as the year went on, now she can sit in the room with him, talk to him. She answers his

---

[7] Newham noted that 7 visits were canceled by either Adoption Connection or the foster family, and that parents cancelled 21 visits. *Id.* at 31.

[8] U.S. Department of Housing and Urban Development https://www.hud.gov/states/pennsylvania (last visited 10/3/23).

questions, they do stuff together now, and she has no problem with him.

*Id.* at 33.

The court-appointed licensed psychologist, Dr. Eric Bernstein, testified that he performed an individual evaluation of Mother on August 19, 2022, and an interactional evaluation between Mother and Children on March 7, 2023. Doctor Bernstein recommended Mother receive higher-level substance abuse treatment, attend NA or AA meetings, and engage in mental health treatment. *Id.* at 44-46. He also opined that Mother's interaction with Children was comfortable and appropriate, that Mother was patient and supportive, and that Children both showed an eagerness to solicit Mother's attention. *Id.* at 59. Nonetheless, despite positive interactions, Dr. Bernstein recognized that this occurred in a "controlled setting," *id.* at 74, and he recommended parental rights be terminated because parents were unable to provide for Children's daily needs. *Id.* at 57. Doctor Bernstein stressed that Mother was unable to provide safety, stability, and security to Children, and that pre-adoptive foster parents met Children's needs and welfare. He also stated that any detriment to Children in severing their bond with Mother would be overcome by the support of the foster parents and "would not necessarily jeopardize their overall wellbeing." *Id*. at 55-58. *See also id.* at 67-69 (Doctor Bernstein opining: "[T]o reunify [Children] with the parents at this time would be compromising [Children's] stability and well-being, consistency, and security [and] that would be detrimental to them[;] parents are not in a position to

provide for their full time needs. Given the turmoil that [Children] have encountered with removal from their parents, placement with the aunt, removal from the aunt, placed in foster care, sporadic visitation with their parents, likely confusion, . . . I certainly would not want to contribute to or exacerbate what [Children] have experienced with the stress, and by placing them with the parents I think that would very well do that.").

Jamie Leasure of Adoption Connections testified that she supervised the parents' visits with Children. *Id.* at 129. She had all positive reports of the parents' interactions with Children, stating Children were excited to see their parents, parents were engaging, asking Children about school and grades, bringing toys, arts and crafts, and food, and disciplining appropriately when necessary. *Id.* at 131-36.

At the termination hearing, Mother acknowledged that she tested positive for fentanyl just prior to giving birth to her most recent child, *id.* at 164-65, and, notably, agreed that she and Father were "not in a position today to have [Children] returned to [them."]. *Id.* at 165.

At the conclusion of the hearing, CYF summarized its position:

All of those issues, [sobriety, mental health, housing] still exist today. So it is unfair for these children at their young age to continue to wait in a state of purgatory to find out if mom and dad can stay sober if mom and dad can actually maintain housing finally after a couple of years of being homeless. The law requires that children have permanency, and it's not at this time able to be accomplished by the parents. Therefore, case law says if the parents cannot provide permanency, the [c]ourt has to look at other permanency options, and in this case they are in a pre-

adoptive, [] stable home. [C]hi1dren are flourishing there, and they should remain there permanently.

*Id.* at 188-89.

The Honorable Paul Cozza terminated Mother's parental rights to A.F. and X.F. Mother filed her timely notices of appeal and Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal. She raises the following issues for our review:

> 1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition[s] to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), and (8)?
>
> 2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would bet serve the needs and welfare of [Children] pursuant to 23 Pa.C.S.A. § 2511(b)?

Appellant's Brief, at 13.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). We review a trial court's decision to involuntarily terminate parental

rights for an abuse of discretion or error of law. ***In re A.R.***, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. ***Id.***

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a two-step analysis. First, the party seeking termination must prove by clear and convincing evidence that the parent's conduct meets at least one of the grounds for termination set forth in section 2511(a). ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007). These grounds, as asserted in CYF's termination petitions, include:

> (2) The repeated and continued incapacity, abuse, neglect[,] or refusal of the parent has caused the child to be without essential parental care, control[,] or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement

- 10 -

> of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8). If grounds for termination are established under subsection (a), the court must then determine whether termination would be in the best interest of the child, considering his or her developmental, physical, and emotional needs and welfare, pursuant to subsection (b). *See In re Adoption of S.P.*, 47 A.3d 817, 827-30 (Pa. 2012).

After our review, we conclude the trial court's order is supported by competent evidence and that termination was proper under subsection 2511(a)(8).[9] Children have been removed from Mother's care for over 12 months, the conditions that led to removal continue to exist, and termination of parental rights would best serve Children's needs and welfare. *Id.* While Mother's interactions with Children during visits was positive and appropriate, her visits were not consistent and she never progressed beyond supervised visitation. More importantly, the record shows that despite services, Mother's lack of cooperation caused in-home crisis services to be closed three times, Mother failed to meet her goals for reunification, having made only minimal progress, and Mother was unable to demonstrate an ability to maintain housing and stability for herself and Children. Therefore, we conclude that

---

[9] While the trial court found that CYF also met its burden of proof under subsections (a)(5), and (8), "we need only agree with its decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

the trial court's termination of Mother's parental rights pursuant to subsection 2511(a)(8) was within its discretion. *See S.P.*, 47 A.3d at 826-27.

Turning to the analysis under section 2511(b), we note that, in terminating the rights of a parent, the court shall give primary consideration to the developmental, physical, and emotional needs and welfare of the child. 23 Pa.C.S.A. § 2511(b). "The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *In re K.S.Z.*, 948 A.2d 753, 760 (Pa. Super. 2008). The extent of any bond analysis depends on the circumstances of the particular case. *Id.* at 763. Moreover, "[a] parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted).

Here, both Jamie Leasure and Dr. Bernstein testified regarding Children's bond with Mother. However, Dr. Berstein emphasized that the positive interactions were in a "controlled setting," and that, in his opinion, any detriment to Children from severing that bond would be counterbalanced by Children's support from their foster parents. Further, Doctor Bernstein testified unequivocally that it was in Children's best interest for Mother's parental rights to be terminated. As this Court has noted, "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003).

Additionally, the testimony established that the Children were bonded with their pre-adoptive foster family and that foster parents were meeting Children's needs. In concluding that termination of Mother's parental rights was in the best interests of Children, the trial court paid close attention to the bond between Children and Mother, the overall safety needs of Children, and the Children's need for "stability in their home life." Trial Court Opinion, 6/15/23, at 9. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) ("In addition to a bond examination, the trial court can equally emphasize the safety needs of the child[.]" ). The trial court stated that Children "do share a bond with Mother" and that it "carefully considered the effect of severing this bond as well as the nature of that bond itself." Trial Court Opinion, *supra* at 9. The court observed:

> As reported by Dr. Bernstein in his testimony, the nature of the bond has been negatively affected by Mother's struggles with addiction, inconsistent visitation, and the overall separation that these issues have caused over the last two years. Mother does not met [Children's] daily needs and does not ensure that their medical or educational needs are being met. Despite Mother's lack of meaningful participation in [Children's] lives, the complete cessation of the relationship could result in some negative emotional consequences for them. However, the court also finds that foster parents could provide [Children] with the support and guidance necessary to overcome any negative impact caused by termination.

*Id.* at 9-10.

Based on the foregoing, we conclude that the trial court did not commit an error of law or an abuse of discretion in finding termination of Mother's rights would serve the best interests of Children pursuant to section 2511(b).

We acknowledge Mother's argument that she has bonds with Children, which is supported by the record. However, the record further supports the trial court's findings of fact and conclusions of law that termination best promotes Children's developmental, physical, and emotional needs and welfare. *See In re T.S.M.* 71 A.3d 251 (Pa. 2013); *see also In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."). Accordingly, we affirm the court's orders terminating Mother's parental rights to Children.

Orders affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/25/2023</u>